IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Joseph and Carla Thuney, a married couple, )
)
                                Plaintiffs, )
)
vs. )
)
Lawyer's Title of Arizona, an Arizona )
Corporation, et al., )
) No. 2:18-cv-1513-HRH
                               Defendants. )
_____)

## O R D E R

### JPMorgan Chase Bank, N.A.'s Motion to Dismiss Lawyers Title's Crossclaims

Defendant JPMorgan Chase Bank, N.A. moves to dismiss Lawyers Title's crossclaims.[1]

This motion is opposed.[2] Oral argument has been heard on the motion.

### Background

Plaintiffs are Joseph and Carla Thuney. Defendants are Lawyers Title of Arizona, Inc.; Julie-Ann Helms; Helms & Helms, PLLC; KeyBank N.A.; and JPMorgan Chase Bank, N.A.

---

[1] Docket No. 46.

[2] Docket No. 56.

In May 2017, plaintiffs were in the process of buying a retirement home in Surprise, Arizona.[3] Plaintiffs allege that around 9 a.m. on May 31, 2017, Mr. Thuney received an email that purported to be from Amanda Zalenski, on behalf of Lawyers, "stating that the Thuneys['] loan had been funded and that they were set to close on the 9th of June."[4] Plaintiffs allege that "[t]his email included a signature line, logos, images, and other trade dress indicating it was from Lawyers" but that it was actually "a forged electronic document making it appear it was from Lawyers when it was not."[5] Plaintiffs allege that "[t]he email also included a forged combined settlement statement and a letter apparently on Lawyers Title's letterhead showing the exact amount due at closing of $119,555.73 and the specific branch of Chase to make the wire transfer to."[6] That branch was alleged to be "located in Houston, Texas."[7]

Plaintiffs allege that around 9:08 a.m. on May 31, 2017, they "received another forged email telling them that the loan had been funded and asking that Joe Thuney call Lawyers to inform them once the transfer of funds was complete so the title could be filed for closing."[8]

---

[3] First Amended Complaint at 4, ¶¶ 22, 24, Docket No. 10.

[4] Id. at 5, ¶ 32.

[5] Id.

[6] Id. at 6, ¶ 33.

[7] Id. at 2, ¶ 8.

[8] Id. at 6, ¶ 35.

Plaintiffs allege that at 11:38 a.m. on May 31, 2017, "using a computer, Joe Thuney sent the forged payment instructions to KeyBank."[9]

Plaintiffs allege that on June 2, 2017, they "received another forged email from the person impersonating Amanda Zalenski stating that Lawyers had not yet received the wire transfer."[10] Later that same morning, plaintiffs allege that "the fraudulent Amanda Zalenski sent a forged email and updated set of wiring instructions for the closing funds. This forged email again had the look, feel, and trade dress of a document from Lawyers."[11] Plaintiffs allege that shortly after receiving this email, "using his computer, Joe Thuney sent an email to KeyBank containing the updated forged wiring instructions."[12]

Plaintiffs allege that on June 5, 2017 at 9:53 a.m., they "received confirmation from the fraudulent Amanda Zalenski that the wire transfer of $119,555.73 had gone through" and that attached to the email was "a Receipt for Deposit that appeared to be from Lawyers Title."[13] Plaintiffs allege that "[t]his time, Joe Thuney noticed that the email addresses were slightly different" and thus he "called the number on the fake wire instructions," but there was no

---

[9] Id. at 6, ¶ 36.

[10] Id. at 6, ¶ 38.

[11] Id. at 6, ¶ 39.

[12] Id. at 6, ¶ 40.

[13] Id. at 7, ¶ 42.

answer.[14]  Plaintiffs allege that they were "becoming suspicious that something might be wrong" and so Joe Thuney called Helms around 3 p.m. on June 5, 2017.[15]  Plaintiffs allege that at 3:36 p.m., "Joe Thuney emailed Helms a copy of the fraudulent Receipt for Deposit" and told her "that he thought there might be a fraud."[16]

Plaintiffs allege that "at 3:57 PM, only hours after the money transaction, Joe Thuney emailed KeyBank stating that there was a potential problem and that they needed to cancel the wire transfer ASAP."[17]  Plaintiffs further allege that

> [o]n or about June 5, 2017, between 3:27 PM and 5:57 PM, Joe Thuney called and emailed Rob Eagar at KeyBank, the real Amanda Zalenski, and Judith Meyer, assistant escrow officer at Lawyers, to try to determine what had occurred and attempt to stop the transaction, informing each of the professionals of the fraudulent activity.  Judith Meyer also directed the Thuneys not to use Amanda Zalenski's email because Lawyers thought her [email] may have been compromised.[[18]]

Lawyers Title alleges that it "notified Chase of [p]laintiffs' claim, i.e., that [p]laintiffs alleged that they were duped into sending their down payment to the wrong account" on June

---

[14] Id.

[15] Id. at 7, ¶ 43.

[16] Id. at 7, ¶ 44.

[17] Id. at 7-8, ¶ 47.

[18] Id. at 8, ¶ 48.

5, 2017.[19] Lawyers Title further alleges that it "specifically requested that Chase freeze the funds until KeyBank recalled the wire" and that "[t]o assist Chase in identifying the funds to freeze, Lawyers Title forwarded to Chase information provided to it by [p]laintiffs, including the account number into which [p]laintiffs had wired their funds and the name of the beneficiary on the account."[20] Lawyers Title alleges that "[o]n June 6, 2017, Chase responded that it had a record of the recall request from KeyBank" and that Chase did not say that the fraudsters "had withdrawn the funds from their Chase account."[21] Lawyers Title further alleges that it "is informed and believes that [p]laintiffs' funds were still on deposit at Chase at both the time that Chase received notice of the potential fraud and at the time that Chase acknowledged receipt of the recall request."[22] Lawyers Title alleges "that Chase failed to freeze the funds when notified of the potential fraud, allowing the bad actors to convert [p]laintiffs' money[]."[23]

Plaintiffs commenced this action on May 18, 2018. In their first amended complaint, they assert breach of fiduciary duty claims against the Helms defendants and Lawyers Title; negligence and gross negligence claims against all defendants except for Chase; an aiding and

---

[19]Lawyers Title's Answer to First Amended Complaint [and] Crossclaim [etc.] at 12, ¶ 70, Docket No. 30.

[20]Id.

[21]Id.

[22]Id. at 12, ¶ 71.

[23]Id. at 12, ¶ 72.

abetting claim against Chase; Electronic Funds Transfer Act claims against Chase and KeyBank; and Arizona Consumer Fraud Act claims against Chase and KeyBank.

On July 19, 2018, Lawyers Title answered plaintiffs' first amended complaint and asserted crossclaims against Chase, KeyBank, and the Helms defendants. Lawyers Title asserts two crossclaims against Chase. In its first crossclaim, Lawyers Title seeks a declaration that Chase "is[] compelled by equitable principles to indemnify and hold Lawyers Title harmless from the claims asserted by [p]laintiffs, as well as from any attorney's fees and costs that Lawyers Title might incur in defense of the claims asserted by [p]laintiffs."[24] Lawyers Title alleges that it is entitled to such a declaration because whatever damages plaintiffs suffered were a result of Chase's and the other cross-defendants' negligence.[25] Lawyers Title's second crossclaim is a claim for indemnity and contribution, which appears to be duplicative of the first crossclaim. In short, Lawyers Title is seeking indemnification from Chase and the other cross-defendants.

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, Chase now moves to dismiss Lawyers Title's crossclaims against it.

### Discussion

"'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Zixiang

---

[24] Id. at 13, ¶ 75.

[25] Id. at 13, ¶ 74.

Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012).

Chase first argues that Lawyers Title's crossclaim for indemnification is defective as a matter of law because in Arizona, "[g]enerally, there is no indemnity among joint tortfeasors[.]" Cella Barr Associates, Inc. v. Cohen, 868 P.2d 1063, 1068 (Ariz. Ct. App. 1994). "Indemnity allows one who has discharged a common liability to seek reimbursement in full from another" and is "'an all or nothing proposition damage-wise, and hence should be an all or nothing proposition fault-wise.'" Herstam v. Deloitte & Touche, LLP, 919 P.2d 1381, 1388–89 (Ariz. Ct. App. 1996) (quoting Transcon Lines v. Barnes, 498 P.2d 502, 509 (Ariz. 1972)). "It permits

one defendant to shift the entire loss to one who more justly deserves it." Id. at 1389. "Severally-liable . . . parties who will not have to pay for damages beyond each one's own percentage of fault . . . will not have a basis for claiming indemnity from [other] parties." Id.

Chase acknowledges that there are "two narrow exceptions" to the general rule that there is no indemnity among joint tortfeasors. Cella Barr, 868 P.2d at 1067. The first exception "applies . . . when the party seeking protection . . . is acting as an agent or servant of another tortfeasor[.]" Id. at 1068. The second exception applies to causes of action "relating to hazardous wastes or substances or solid waste disposal sites." Id. (citation omitted). Because Lawyers Title does not contend that either of the two exceptions applies, Chase argues that the only way that Lawyers Title would be entitled to indemnification is if Lawyers Title was not at fault for any of plaintiffs' damages. But because Chase contends that Lawyers Title did not allege that it is without fault, Chase argues that Lawyers Title's claim for indemnification is not plausible.

Chase contends that Lawyers Title has simply alleged that Chase had an opportunity to prevent plaintiffs' harm, but that Lawyers Title has not alleged that it is free from fault. Chase argues that Lawyers Title is attempting to apply the common law doctrine of last clear chance to support its contention that Chase is liable for all of the harm plaintiffs suffered. But, the last clear chance "theory of indemnity did not survive the adoption of comparative negligence in Arizona. . . ." Id. Chase argues that as a party that remains at risk of being found at least partially at fault, Lawyers Title has no claim for indemnification because "an allocation of any

portion of fault to [Lawyers] will foreclose a right to implied common law indemnity from" Chase.  Herstam, 919 P.2d at 1389.

In its crossclaim, Lawyers Title has adequately alleged that it was not at fault.  Lawyers Title has alleged that plaintiffs' losses were the result of the cross-defendants' negligence and that it "has determined that there was no security breach of Lawyers Title's information technology systems."[26]  A reasonable inference that could be drawn from these allegations is that Lawyers Title was not at fault for plaintiffs' losses.

But even if it has not alleged that it was not at fault, Lawyers Title argues that Chase might still be obligated to indemnify it.  This argument is based on Busy Bee Buffet, Inc. v. Ferrell, 310 P.2d 817 (Ariz. 1957).  There, the Arizona Supreme Court held that indemnity may be available among joint tortfeasors

> where one tort-feasor is not guilty of the same fault as the other, although both are liable to the injured party; where the negligence of the joint tort-feasors is not of the same character; where they do not commit the same wrong; where one is not a wrongdoer as between himself and the other; where there is no joint action in causing the injury; where they do not act together in committing the wrongful act; where one is not guilty of the same tortious delinquency; where the negligence of one is only imputed or constructive; where one is liable by construction of law on account of some omission of a duty of protection or care; and where one tort-feasor is liable to a third party by reason of a legal relationship to the other tort-feasor, or because of a condition brought about by the latter, in the creation of which the other has not joined.  It is also said that where one is the 'active' tort-feasor, and the other,

---

[26]Lawyer Title Answer to First Amended Complaint [and] Crossclaim [etc.] at 10, ¶¶ 65-66, Docket No. 30.

> the 'passive'-or where the primary or active fault rests upon one tort-feasor, he, as the active tort-feasor, is liable to the other.

Id. at 821 (citation omitted); see also, Grubb & Ellis Mgmt. Srvcs., Inc. v. 407417 B.C., L.L.C., 138 P.3d 1210, 1217 n.7 (Ariz. Ct. App. 2006) ("[u]nder the theory of indemnity by operation of law, courts allow one of the joint tortfeasors, whose liability is only secondary, or based on passive negligence, to recover from the other whose liability is primary, or based on active negligence"); INA Ins. Co. of North America v. Valley Forge Ins. Co., 722 P.2d 975, 979 (Ariz. Ct. App. 1986) ("[i]ndemnity by operation of law may arise when liability is imposed on a joint tortfeasor due only to his 'passive' or 'secondary' negligence"); Terry v. Newell, Case No. CV-12-02659–PHX–DGC, 2014 WL 5100233, at *6 (D. Ariz. Oct. 3, 2014) ("under Arizona law, when two parties are liable for an injury, the party who is only secondarily at fault may seek indemnification from the party who is primarily at fault").

"Generally, active negligence is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform." Estes Co. v. Aztec Const., Inc., 677 P.2d 939, 942 (Ariz. Ct. App. 1983). "On the other hand, passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition, perform a duty imposed by law, or take adequate precautions against certain hazards inherent in employment." Id. Lawyers Title argues that plaintiffs have alleged that Chase was actively negligent in that it failed to freeze the funds after it was notified of the potential fraud and that plaintiffs have alleged that Lawyers Title was only passively negligent

in that it failed to take adequate precautions to prevent plaintiffs' financial information from being stolen. Thus, depending on what plaintiffs are ultimately able to prove, Lawyers Title argues that Chase could be liable to Lawyers Title even if Lawyers Title is found to be partly at fault for plaintiffs' losses.

However, as even Lawyers Title acknowledges, some courts have found that "[t]he continued viability of the notion . . . that an actively negligent tortfeasor must indemnify a passively negligent joint tortfeasor is very much in doubt." Herstam, 919 P.2d at 1389. The Arizona Supreme Court has explained that

> [t]he Busy Bee doctrine applies only where: (1) the party seeking indemnity is not at fault at all; or (2) if he was at fault, his causative contribution ended so that he is held liable only because of the continuing conduct of the indemnitor; or (3) where he is liable only because the law imposes liability upon him for the torts of the indemnitor.

Shea v. Superior Court of Maricopa County, 723 P.2d 89, 92 (Ariz. 1986). Chase argues that none of these circumstances exist here. First, Chase argues that it is not plausible that Lawyers Title would be forced to pay plaintiffs' damages even if it was not at fault. Second, Chase argues that it is not plausible that Lawyers Title would be found liable only because of Chase's misconduct. Thirdly, Chase argues that it is not plausible that Lawyers Title would be found liable because the law imposed liability. Chase points out that "[s]ubsequent Arizona decisions construing Busy Bee . . . have been adamant that the one seeking indemnity not be personally at fault in any way if he is to recover." Transcon Lines, 498 P.2d at 505. Chase insists that it is not plausible that Lawyers Title would not be personally at fault in any way.

However, it is plausible that Lawyers Title could be at fault for failing to use an encrypted email system but that it was Chase's continuing conduct of failing to freeze the funds that resulted in plaintiffs' actual losses. If Chase had frozen the funds, it is plausible that the funds could have been returned to plaintiffs and they would not have suffered any loss. It is plausible that if Lawyers Title was at fault, its "causative contribution ended so that" it would be "liable only because of the continuing conduct of" Chase. Shea, 723 P.2d at 92.

Chase next argues that Lawyers Title's indemnification claim is not plausible because Chase is not fault. Chase argues that it is not at fault here because it complied with Article 4A of the U.C.C. Article 4A "governs the rights and responsibilities between the originator and the originator's bank and between intermediary banks involved in payment orders . . . as well as between a beneficiary's bank and the beneficiary." Koss Corp. v. Amer. Exp. Co., 309 P.3d 898, 906 (Ariz. Ct. App. 2013) (internal citations omitted). But, as discussed in more detail in the court's order on Chase's motion to dismiss plaintiffs' claims, plaintiffs' claims are based on what Chase did after the wire transfer was complete and thus Article 4A does not apply. In other words, despite Chase's suggestion that it could not be found to be at fault here, it is plausible that Chase could be found liable for plaintiffs' losses, which means it is plausible that Lawyers Title has an indemnification claim against Chase.

Finally, Chase argues that Lawyers Title has suggested that Chase would be liable to plaintiffs based on a theory of negligence but has then failed to allege that Chase owed any duty to plaintiffs. Chase argues that Lawyers Title cannot rely on allegations that plaintiffs have

made in their first amended complaint but rather must have alleged some duty in its crossclaim. See Quiroz v. ALCOA Inc., 416 P.3d 824, 838 (Ariz. 2018) ("Arizona does not presume duty; rather, in every negligence case, the plaintiff bears the burden of proving the existence of a duty").

Chase is correct that Lawyers Title has not alleged that Chase owed plaintiffs a duty. Lawyers Title does allege that Chase was negligent because it failed to freeze the funds that had been wired after it had been notified of the potential fraud.[27] But plaintiffs have not asserted a negligence claim against Chase nor has Lawyers Title asserted a negligence claim against Chase in its crossclaim. Lawyers Title seeks indemnification from Chase based on plaintiffs' claims against Lawyers Title, including plaintiffs' negligence claim against Lawyers Title. Lawyers Title has plausibly stated an indemnification claim against Chase, which is the issue here.

## Conclusion

Chase's motion to dismiss[28] Lawyers Title's crossclaims is denied.

DATED at Anchorage, Alaska, this 5th day of February, 2019.

/s/ H. Russel Holland
United States District Judge

---

[27]Lawyers Title Answer to First Amended Complaint [and] Crossclaim [etc.] at 12, ¶ 72, Docket No. 30.

[28]Docket No. 46.