IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph and Carla Thuney, a married couple, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| Lawyer's Title of Arizona, an Arizona Corporation, et al., | ) |
| | ) No. 2:18-cv-1513-HRH |
| Defendants. | ) |

O R D E R

KeyBank's Motions to Dismiss

KeyBank N.A. moves to dismiss plaintiffs' claims against it, or, in the alternative, to transfer these claims to the Western District of Washington.[1] This motion is opposed.[2] KeyBank N.A. also moves to dismiss Lawyers Title's crossclaims.[3] This motion is opposed.[4] Oral argument has been heard on both motions.

---

[1]Docket No. 28.

[2]Docket No. 50.

[3]Docket No. 42.

[4]Docket No. 66.

Background

Plaintiffs are Joseph and Carla Thuney. Defendants are Lawyers Title of Arizona, Inc.; Julie-Ann Helms; Helms & Helms, PLLC; KeyBank N.A.; and JP Morgan Chase Bank, N.A.

Plaintiffs, who reside in Washington state, allege that in 2017, they were in the process of buying a retirement home in Arizona.[5] Lawyers Title was to act as the escrow holder for the transaction. Plaintiffs allege that during the process of buying their retirement home in Arizona, they received emails that appeared to be from Lawyers Title, but were not.[6] Two of the forged emails provided instructions for transferring plaintiffs' down payment amount of $119,555.73, instructions which plaintiffs then provided to KeyBank.[7] The funds were to come from a Key Bank account owned by Carla Thuney, which had been "opened in 2010 by KeyBank personnel at the branch located at 12550 SE 82nd Avenue, Clackamas, Oregon."[8] The wiring instructions provided that the funds were to be wired to a Chase Bank account in Houston, Texas.[9]

---

[5]First Amended Complaint at 3, ¶ 14; 4, ¶¶ 22-24, Docket No. 10.

[6]Id. at 5, ¶ 32; 6, ¶ 35.

[7]Id. at 6, ¶¶ 34-36, 39-40.

[8]Declaration of Lynne Root-Ferguson [etc.] at 2, ¶ 4, appended to KeyBank N.A.'s Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 28.

[9]Exhibit A at 1, Root-Ferguson Declaration, appended to KeyBank N.A.'s Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 28.

"The wire transfers at issue in this case from the Thuney Account were initiated by KeyBank personnel at the branch located at 1217 NE Highway 99, Suite 101, Vancouver, Washington."[10] On June 2, 2017, "KeyBank personnel in Washington completed an internal wire transfer request form" and the funds were thereafter wired to the Chase account in Texas.[11]

Plaintiffs allege that they alerted KeyBank on June 5, 2017 that they suspected there had been fraud and that KeyBank attempted to stop the transfer.[12] Plaintiffs allege that on June 19, 2017, they learned from KeyBank's fraud representative that "Chase had released the funds to the individuals or entities who had conducted the fraud" and that "the funds were no longer available."[13]

On May 21, 2018, plaintiffs commenced this action. They assert negligence, gross negligence, Electronic Funds Transfer Act, and Arizona Consumer Fraud Act claims against KeyBank.

On July 19, 2018, Lawyers Title answered plaintiffs' first amended complaint and asserted crossclaims against KeyBank. Lawyers Title alleges that KeyBank "negligently 'missed' several indicia of fraud when it processed [p]laintiffs' wire request to the bogus

---

[10]Root-Ferguson Declaration at 2, ¶ 6, appended to KeyBank N.A.'s Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 28

[11]Id. at 3, ¶¶ 9-10.

[12]First Amended Complaint at 7-8, ¶¶ 47-48, Docket No. 10.

[13]Id. at 9, ¶ 56.

account that purported to belong to Lawyers Title."[14] More specifically, Lawyers Title alleges that KeyBank should have noticed that "the domain name of the 'fake' Amanda Zalenski's e-mail was at a 'g-mail' account" rather than "a corporate domain."[15] Lawyers Title also alleges that KeyBank should have noticed that "the e-mail address for the 'SoFi' loan broker was also at a 'g-mail' account" rather than "a corporate domain[.]"[16] And, Lawyers Title alleges that KeyBank should have noticed that "the beneficiary shown on the wire instructions was the 'Olympus Group,' and not Lawyers Title."[17]

Lawyers Title further alleges that

> the first time that Key Bank attempted to transmit the subject wire, it was rejected. Because it was rejected, Key Bank called the telephone number which appeared on the fraudulent wire instructions to confirm the instructions. The person who answered the phone had a heavy accent, which caused the Key Bank employee "concern." Hence, the Key Bank employee found a phone number for some random Lawyers Title office on the internet, and called the office to confirm that the company employed someone by the name of Amanda Zalenski.[18]

Lawyers Title alleges that "[b]ased on this investigation, Key Bank apparently assuaged its 'concerns' regarding malfeasance[,]" but Lawyers Title alleges that "a reasonably prudent

---

[14]Lawyer Title's Answer to First Amended Complaint [and] Crossclaim [etc.] at 10, ¶ 68, Docket No. 30.

[15]Id. at 11, ¶ 68.

[16]Id.

[17]Id.

[18]Id. at 11, ¶ 69.

bank would have, at a minimum, attempted to contact the 'real' Amanda Zalenski. . . ."[19] Lawyers Title supports these allegations with the declaration of Judy Meyer, who is an assistant escrow officer for Lawyers Title.[20] Meyer avers that she spoke with Rob Eagar, a KeyBank branch manager, who told her that "he called the phone number which appeared on the fraudulent wire instruction, and asked to speak with 'Amanda Zalenski' to confirm the wire instructions."[21] Meyer further avers that "Mr. Eagar told me that the woman with whom he spoke had a 'foreign' accent, and that made him 'suspicious' that something was afoot."[22] Meyer further avers that

> Mr. Eagar told me that, because the "foreign" accent of the woman with whom he spoke made him "suspicious," he decided to conduct some investigation. Specifically, he told me that he called another office of Lawyers Title to confirm that Lawyers Title did, in fact, employ someone named Amanda Zalenski in Arizona. When that other office gave him that confirmation, Mr. Eagar told me that he then processed the wire request, and that the wire went through on this second attempt. During my call with Mr. Eagar, I asked Mr. Eagar whether he also asked the Lawyers Title office to confirm Ms. Zalenski's phone number. . . . He told me that he did not do so.[23]

---

[19]Id.

[20]Declaration of Judy Meyer at 1 ¶ 1, which is appended to Lawyer Title's Opposition to KeyBank's Motion to Dismiss Lawyers Title's Crossclaims, Docket No. 66.

[21]Id. at 2, ¶¶ 3-4.

[22]Id. at 2, ¶ 4.

[23]Id. at 3, ¶ 6,

Lawyers Title asserts two crossclaims against KeyBank. In its first crossclaim, Lawyers Title seeks a declaration that KeyBank "is[] compelled by equitable principles to indemnify and hold Lawyers Title harmless from the claims asserted by [p]laintiffs, as well as from any attorney's fees and costs that Lawyers Title might incur in defense of the claims asserted by [p]laintiffs."[24] Lawyers Title's second crossclaim is a claim for indemnity and contribution, which appears to be duplicative of the first crossclaim. In short, Lawyers Title is seeking indemnification from KeyBank.

Pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, KeyBank now moves to dismiss plaintiffs' claims and Lawyer Title's crossclaims on the ground that this court lacks personal jurisdiction of KeyBank. In the alternative, KeyBank moves to transfer plaintiffs' claims to the Western District of Washington.

Discussion

"Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate." Dole Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). "In determining whether [a plaintiff has] met this prima facie burden,

---

[24]Lawyer Title's Answer to First Amended Complaint [and] Crossclaim [etc.] at 13, ¶ 75, Docket No. 30.

uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor. . . .'" Ochoa v. J.B. Martin and Sons Farms, Inc., 287 F.3d 1182, 1187 (9th Cir. 2002) (quoting Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996)). "Additionally, any evidentiary materials submitted on the motion 'are construed in the light most favorable to the plaintiff and all doubts are resolved in [his] favor.'" Id. (quoting Metro. Life Ins. Co. v. Neaves, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990)).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." Dole Food Co., 303 F.3d at 1110. "Arizona's long-arm statute provides that an Arizona court may exercise personal jurisdiction over a nonresident defendant to the maximum extent permitted under the Due Process Clause of the United States Constitution." Ariz. School Risk Retention Trust, Inc. v. NMTC, Inc., 169 F. Supp. 3d 931, 935 (D. Ariz. 2016). "The Constitution permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has at least 'minimum contacts' with the forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).

"[T]here are two forms that personal jurisdiction may take: general and specific." Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015). Plaintiffs argue that the court has both general and specific jurisdiction of KeyBank. Lawyers Title argues that the court has

specific jurisdiction of KeyBank, but if there is not specific jurisdiction, Lawyers Title requests that it be allowed to take discovery as to general jurisdiction.

"'A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.'" BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)). "The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation and its principal place of business." Id. (quoting Daimler, 571 U.S. at 117). KeyBank is headquartered in Ohio and its parent company is an Ohio corporation.[25] And, as plaintiffs allege, its principal place of business is in Ohio.[26]

But, "[t]he exercise of general jurisdiction is not limited to these [paradigm] forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" Id. (quoting Daimler, 571 U.S. at 139 n.19). KeyBank argues that this is not such an exceptional case because it does not have substantial operations in Arizona.

---

[25]Root-Ferguson Declaration at 3, ¶¶ 11-12 and Exhibits C and D thereto, appended to KeyBank N.A.'s Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 28.

[26]First Amended Complaint at 4, ¶ 19, Docket No. 10.

In support of its argument, KeyBank offers evidence that it "has neither any branches nor any ATMs in Arizona" and that "it has no retail banking presence in Arizona."[27] Rather, "KeyBank's retail footprint is focused in Northwestern, Midwestern and Northeastern United States."[28] KeyBank does have "<u>one</u> facility in Arizona that supports commercial lending."[29] This one facility employs 21 people and KeyBank also has "7 independent contractors who perform remote work from home in Arizona."[30] Most of the 21 employees "support the bank's corporate real estate division [which] does not offer any consumer products (like the Thuneys' account), nor does it offer consumer services (like the wire transfer at issue)."[31] "The few remaining KeyBank employees in Arizona mostly work in areas that provide back-office support (technology, recruiting, internal financial reporting, risk analysis, and quantitative analytics). None have any responsibility for sending or receiving wire transfers and none interface with retail customers on wire transfers."[32] KeyBank also offers evidence that it has "1,274 facilities worldwide[,]" "19,282 employees" in the United States, and

---

[27] Root-Ferguson Declaration at 3-4, ¶ 14, appended to KeyBank N.A.'s Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 28.

[28] Id. at ¶ 3, 13.

[29] Id. at 4, ¶ 15.

[30] Supplemental Declaration of Lynn Root-Ferguson [etc.] at 2, ¶ 3, appended to KeyBank's Motion to Dismiss Lawyers Title's Crossclaims for Lack of Personal Jurisdiction, Docket No. 42.

[31] Id. at 2, ¶ 4.

[32] Id. at 2, ¶ 5.

"[l]ess than one percent of [its] total assets - retail and corporate - are located in Arizona."[33] KeyBank argues this minimal presence in Arizona does not make KeyBank "so heavily engaged in activity in" Arizona "as to render [it] essentially at home" there. BNSF Ry. Co., 137 S. Ct. at 1559 (citation omitted).

Plaintiffs disagree and argue that KeyBank's use of Arizona courts to prosecute claims is sufficient in itself to make a prima facie showing of general jurisdiction. In support of their contention that KeyBank is utilizing Arizona courts to prosecute claims, plaintiffs submit PACER search results which show that since 1990, KeyBank has been a plaintiff in six federal bankruptcy cases.[34] Plaintiffs also submit a list of state court cases which shows that KeyBank has been a party in 20 state court cases since 1998.[35] Plaintiffs request that the court take judicial notice of this evidence. See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (quoting St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979) (courts "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue'").

Assuming that the court could take judicial notice of the fact that KeyBank has been involved in some litigation in Arizona, plaintiffs have not cited to any authority that stands

---

[33]Root-Ferguson Declaration at 4, ¶¶ 16-17, 19, appended to KeyBank N.A.'s Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 28.

[34]Exhibit A, Request for Judicial Notice, Docket No. 49.

[35]Exhibit B, Request for Judicial Notice, Docket No. 49.

for the proposition that a defendant's prior use of the forum's courts can be a basis for general jurisdiction. But even if it could, these contacts with Arizona, some 26 cases over almost 30 years, are not sufficient to show that KeyBank is "at home" in Arizona.

Plaintiffs next argue that KeyBank's minimal presence in Arizona and its use of courts in Arizona, taken together, are sufficient to make a <u>prima</u> <u>facie</u> showing of general jurisdiction. But even taken together, KeyBank's general contacts with Arizona are not so "continuous and systematic as to render [KeyBank] essentially at home in" Arizona. <u>BNSF Ry. Co.</u>, 137 S. Ct. at 1558.

Lawyers Title suggests, however, that KeyBank is downplaying its presence in Arizona and argues that if it were allowed to conduct jurisdictional discovery, it may find evidence sufficient to support the exercise of general jurisdiction. Jurisdictional "[d]iscovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." <u>Boschetto v. Hansing</u>, 539 F.3d 1011, 1020 (9th Cir. 2008). But "'[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the [c]ourt need not permit even limited discovery. . . .'" <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting <u>Terracom v. Valley Nat'l Bank</u>, 49 F.3d 555, 562 (9th Cir. 1995)). It is not an abuse of discretion for the court to deny a request for jurisdictional discovery that is "based on little more than a hunch that it might yield jurisdictionally relevant facts[.]" <u>Boschetto</u>, 539 F.3d at 1020.

In support of its request to take jurisdictional discovery, Lawyer Title offers a copy of KeyBank's website for its income property group, which shows that the Western Regional manager is Andrew Lucca, who has a 602 area code, which is an Arizona area code.[36] Lawyers Title offers evidence that Lucca is "[b]ased in Phoenix" and that "he manages two sales teams that provide a full range of financial service and products for commercial real estate owners based in Alaska, Washington, Oregon, California, and Arizona[.]"[37] Lawyers Title contends that this evidence suggests that KeyBank's "major nerve center for the western US is located in Phoenix[.]"[38] Lawyers Title argues that this evidence is sufficient to support its request to take jurisdictional discovery regarding the scope of KeyBank's presence in Arizona.

The fact that one of KeyBank's regional manager lives in Arizona does not suggest that it has a "major nerve center" located in Arizona. Lucca avers that "[t]he Phoenix office supports the income property group of KeyBank Real Estate Capital. That group is also supported by an office in Seattle, Washington. I manage both those offices."[39] Lucca avers

---

[36]Exhibit A, Declaration of Kevin S. Sinclair, which is appended to Lawyer Title's Opposition to KeyBank's Motion to Dismiss Lawyers Title's Crossclaims, Docket No. 66.

[37]Exhibit B at 3, Sinclair Declaration, which is appended to Lawyer Title's Opposition to KeyBank's Motion to Dismiss Lawyers Title's Crossclaims, Docket No. 66.

[38]Lawyers Title's Opposition to KeyBank's Motion to Dismiss Lawyers Title's Crossclaims at 6, Docket No. 66.

[39]Declaration of Andrew Lucca Supporting KeyBank's Motions to Dismiss at 2, ¶ 4, which is appended to Reply Supporting KeyBank's Motion to Dismiss Lawyers Title's Cross
(continued...)

that he has five direct reports in the Phoenix office, five in the Seattle office, and one based in Los Angeles, California.[40] Lucca further avers that "[t]he income property group is just one part of KeyBank Real Estate Capital, which in turn is just one part of KeyBank's corporate bank, which in turn is just one part of KeyBank National Association."[41] Lucca avers that "[t]he KeyBank executive officer who is ultimately in charge of Key Real Estate Capital – including the income property group – is located in Cleveland, Ohio."[42]

Lucca's averments, along with the evidence offered by Lawyers Title, show that KeyBank has, at best, a minimal presence in Arizona. Lawyers Title has offered nothing more than speculation that if it were allowed to take jurisdictional discovery it might discover that KeyBank has a larger presence in Arizona. Lawyers Title's request to take general jurisdictional discovery is denied.[43]

Turning then to the question of specific jurisdiction,

> [t]he court

---

[39](...continued)
Claims for Lack of Personal Jurisdiction, Docket No. 67.

[40]Id. at 2, ¶ 5.

[41]Id. at 2, ¶ 6.

[42]Id. at 2, ¶ 6.

[43]Plaintiffs also make a vague request to take jurisdictional discovery. This request is denied because plaintiffs have made no showing as to what additional facts they believe they might discover were they allowed to take jurisdictional discovery.

> employ[s] a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:
>
> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Picot, 780 F.3d at 1211 (citation omitted). The focus is on the defendant's contacts with the forum state. "[T]he relationship must arise out of contacts that the 'defendant himself' creates with the forum State." Walden v. Fiore, 571 U.S. 277, 284 (2014) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)). "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." Id. at 291.

"For claims sounding in tort," such as plaintiffs and Lawyers Title assert against KeyBank, the court applies "a 'purposeful direction' test. . . ." Picot, 780 F.3d at 1212. The "court evaluates purposeful direction using the three-part 'Calder-effects' test[.]" Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010). "Under this test, [']the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the

forum state.'" Id. (quoting Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006)).

KeyBank's intentional acts were wiring funds from plaintiffs' account to the Chase account and the two phone calls made by Mr. Eagar in connection with the wire transfer. The issue here is whether any of these acts were expressly aimed at Arizona.

As for the wire transfer itself, plaintiffs are Washington residents who instructed KeyBank personnel in Washington to wire funds from their Washington account to a bank account in Texas. The only connection to Arizona is that plaintiffs may have believed that the funds should have been wired to a recipient in Arizona. But that is not sufficient, particularly since the instructions that plaintiffs themselves sent to KeyBank directed KeyBank to send the funds to Texas. Moreover, federal courts routinely decline to use money transfers as a basis for specific jurisdiction because the wire transfer is done at the plaintiff's request. For example, in Monkton Insurance Services, Ltd. v. Ritter, 768 F.3d 429, 433 (5th Cir. 2014), Ritter, a Texas resident, argued that the court had specific jurisdiction over a Cayman bank (Butterfield) based on communications and wire transfers. The court rejected Ritter's argument because "the communications between Ritter and Butterfield and the wire transfers facilitated by Butterfield were initiated by Ritter or Geneva[,]" a Cayman company. Id. In other words, because Butterfield itself had not initiated the contact with the forum state, the court held that this contact was not sufficient to support specific jurisdiction. Id.; see also, Woodco Dynamic, LLC v. Venetian

Investments, LLC, Case No. 2:10–cv–00035 JWS, 2010 WL 1813788, at *3 (D. Ariz. May 5, 2010) ("contacts with Arizona[, which] consist[ed] of entering into a contract with 3536, an Arizona limited liability company, and sending payments to a Bank of American account in Arizona . . . are insufficient to establish that Venetian purposefully availed itself of the privilege of doing business in Arizona"); Harris v. Lloyds TSB Bank, PLC, Case No. 07–5661, 2008 WL 2467999, at *6 (6th Cir. June 18, 2008) ("[t]he wire transfers accepted or confirmed by Lloyds from Tennessee and any wire transfers originated by Hogsed in the United Kingdom and sent to Tennessee cannot constitute purposeful availment, because none of those transfers were initiated by Lloyds"). In sum, the wire transfer was not expressly aimed at Arizona.

As for the two phone calls, Lawyers Title has not expressly alleged that either of these two phone calls was made to Arizona, and there is evidence to the contrary. Although the wire instructions listed a phone number for Zalenski with a 602 area code,[44] which is an Arizona area code, KeyBank offers evidence that the phone number in question is attached to an internet-based carrier, which means that the number and its area code have nothing to do with the location of the owner of the phone or the location of whoever might answer a call at that number. Eli Rosenblatt, who is an investigator with "years of experience researching and tracing phone numbers . . . to determine their carrier, location, and registered owner[,]"

---

[44]Exhibit A at 1, Root-Ferguson Declaration, which is appended to KeyBank N.A.'s Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 28.

avers that "[t]he telecommunications carrier assigned to" the phone number in question "is 'BANDWIDTH.COM CLEC LLC,' which is headquartered in Raleigh, North Carolina and has offices in Colorado and New York."[45] Rosenblatt further avers that "Bandwidth.com is a Voice Over Internet Protocol (VoIP) network", which means "that phone calls are made and received using the internet" and that "phone numbers are untethered to any particular geographic location or switch and simply require an internet connection to be used."[46] Rosenblatt avers that "[a]lthough" the phone number in question "has a '602' prefix, that area code is not determinative of the phone's or its user's location. Since the Number is attached to a VoIP carrier, the user can make and receive phone calls anywhere in the world that has an internet connection."[47] As for the other phone call that Mr. Eagar made to a Lawyers Title office, Lawyers Title does not allege that this phone call was made to a Lawyers Title office in Arizona, but rather Lawyers Title alleges that Mr. Eagar called a "random" Lawyers Title office. There is also no evidence before the court that Mr. Eagar believed that he was reaching out to Arizona. Mr. Eagar told Meyer that he called the 602 number on the wiring instructions, but there is no evidence that he knew that was an Arizona area code.

---

[45] Declaration of Eli Rosenblatt Supporting Motion to Dismiss at 2, ¶¶ 3-4 which is appended to KeyBank's Motion to Dismiss Lawyers Title's Crossclaims for Lack of Personal Jurisdiction, Docket No. 42.

[46] Id. at 2, ¶¶ 5-6.

[47] Id. at 2, ¶ 7.

But even if Mr. Eagar actually called Arizona or intended to call Arizona, his two phone calls would not be sufficient to find that KeyBank's conduct was expressly aimed at Arizona because the focus here is on "'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" Morrill v. Scott Financial Corp., 873 F.3d 1136, 1143 (9th Cir. 2017) (quoting Walden, 134 S. Ct. at 1122). In Morrill, the court observed that "[a]ny links to Arizona, which included Defendants' communications with Plaintiffs by telephone and email . . . , occurred only because it happened to be where Plaintiffs resided" and the court found that this link was not sufficient to support personal jurisdiction in Arizona. Id. at 1144. Similarly here, even if the two phone calls were made to Arizona, they would have only been made to Arizona because Lawyers Title is located in Arizona.

It is "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" that is the focus under the Calder "effects" test. Walden, 134 S. Ct. at 1122. Although Lawyers Title repeatedly asserts that KeyBank intended to wire the money to Arizona and knew that it was doing business with an Arizona company, the wiring instructions plainly stated that the money was to be wired to a Chase account in Houston, Texas and that the money was being sent to Olympus Group, which was the "closing partner of Lawyers Title."[48] In short, KeyBank was instructed, by plaintiffs, to wire money to Texas

---

[48]Exhibit A at 1, Root-Ferguson Declaration, which is appended to KeyBank N.A.'s Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 28.

to an entity other than Lawyers Title of Arizona. KeyBank's intentional acts were not expressly aimed at Arizona. Thus, the first prong of the specific jurisdiction test has not been met.[49] The court does not have specific jurisdiction of KeyBank.

Because the court lacks personal jurisdiction of KeyBank, it must either dismiss plaintiffs' claims and Lawyers Title's crossclaims against KeyBank or transfer the claims and crossclaims to another federal district court. "28 U.S.C. § 1631 directs [the court] to transfer a case if (1) the court to which the action is to be transferred would have had jurisdiction 'at the time [the action] was filed,' and (2) 'it is in the interest of justice' to transfer." Munns v. Kerry, 782 F.3d 402, 414 (9th Cir. 2015). Here, because only part of the case could be transferred to the Western District of Washington, the court must first consider whether it would be appropriate to sever the claims against KeyBank. Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1519 (10th Cir. 1991). The court "should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." McCullough v. Royal Caribbean Cruises, Ltd., 268 F. Supp. 3d 1336, 1353 (S.D. Fla. 2017) (citation omitted). "'Such duplicitous litigation is not in the interest of justice.'" Id. (quoting Kennedy v. Phillips, No. 11-1231, 2012 WL 261612, at *4 (W.D. Wash. Jan. 23, 2012)).

---

[49]Because the first prong of the specific jurisdiction test has not been met, the court need not consider the second and third prongs of the test. Had the court considered these prongs, it would have found that plaintiffs' claims and Lawyers Title's crossclaims did not arise out of or relate to KeyBank's forum-related activities and that the assertion of personal jurisdiction over KeyBank would not have been reasonable.

Here, a transfer would not be in the interest of justice because it would result in duplicitous litigation. Thus, the court must dismiss plaintiffs' claims and Lawyers Title's crossclaims against KeyBank.

Because the court does not have personal jurisdiction of KeyBank, it need not consider KeyBank's alternative motion to transfer.

## Conclusion

KeyBank's motion to dismiss[50] plaintiffs' claims is granted. Plaintiffs' claims against KeyBank are dismissed without prejudice. KeyBank's motion to dismiss[51] Lawyers Title's crossclaims is granted. Lawyers Title's crossclaims against KeyBank are dismissed without prejudice.

DATED at Anchorage, Alaska, this 5th day of February, 2019.

/s/ H. Russel Holland
United States District Judge

---

[50]Docket No. 28.

[51]Docket No. 42.